UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PATRICK MURACA,

                       Petitioner,

           v.

UNITED STATES OF AMERICA,

                       Respondent.

No. 17-CR-739 (RA)
No. 21-CV-6003 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Petitioner Patrick Muraca, proceeding *pro se*, filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, alleging that he received ineffective assistance of counsel and that forfeiture was improperly imposed. For the reasons that follow, Muraca's petition is denied.

## BACKGROUND

Muraca, the founder of two biotechnology companies, MetaboRX LLC ("Metabo") and NanoMolecularDX LLC ("NMDX"), was arrested in 2017 and later convicted of wire fraud and making materially false statements. *See* Dkt. No. 77, Presentence Report ¶¶ 1-8. During trial, the Government introduced evidence that Muraca had defrauded company investors by lying about how funds would be spent, falsifying certain financial documents, comingling corporate and personal funds, and misrepresenting the status of clinical trials. *See, e.g.*, Tr. 119-20, 361, 371-76; GX 301, 302, 604, 607, 609, 611, 1307. The Government also presented testimony that Muraca lied to the U.S. Attorney's Office during his post-arrest "innocence proffer." *See* Tr. 241-42, 420-22, 891-92; GX 117. In particular, the Government argued that Muraca defrauded Metabo's first investor, Carl DiCesare Jr., by providing him with a letter "premised on the lie that other people,

unnamed investors, [had] already invested in Metabo." Tr. 942.  Muraca gave DiCesare a brochure stating that Metabo had "Capitalization to date: $1.5M," which DiCesare testified he understood to mean "that [$1.5 million] is how much money was raised at this point."  GX 302; Tr. 121.  The Government asserted that Muraca thus falsely represented to DiCesare that Metabo had raised money from other investors, *see* Tr. 943, and that "Muraca took [DiCesare's] money and shut him out."  Tr. 946.

During Muraca's defense case, his trial counsel called several witnesses, including a private investigator, an attorney present at Muraca's meeting with the U.S. Attorney's Office, one of NMDX's investors, and NMDX's CEO.  In closing arguments, Muraca's counsel argued that Muraca had acted in good faith, without an intent to defraud investors or make false statements to the Government.  *See* Tr. 983-1036.  Defense counsel also asserted that at least one investor "clearly understood that his investment would be used … for working capital in the companies" and that "working capital obviously includes a salary for the CEO."  Tr. 999-1000.

While jury deliberations were ongoing, the jury sent the Court several notes with questions on various topics.  *See* Tr. 1112-1143.  One such note stated: "Can we get a definition for the word 'capitalization'? Can it include the projected value of [intellectual property]?"  Tr. 1125-26.  After reviewing letters from both parties and hearing oral argument, the Court replied to the jury's note with the following statement: "It would be outside the province of the Court to define business terms, such as 'capitalization' or 'funding,' that are discussed in particular documents and/or testimony in evidence."  Tr. 1172-73.

The jury returned a verdict of guilty on both counts.  During sentencing, the Court adopted a Guidelines calculation of 24 to 30 months' imprisonment and sentenced Muraca to 27 months' imprisonment followed by three years' supervised release.  Sent. Tr. 17-18, 48-51.  The Court also

imposed forfeiture in the amount of $1,165,280. *Id.* at 53-54. Muraca later appealed his conviction to the Second Circuit. *See* Br. Def.-Appellant, Patrick Muraca ("Appellant Br."), *United States v. Muraca*, 803 F. App'x 545 (2d Cir. 2020). Represented by new counsel, Muraca argued that the Court erred by declining to provide the jury with an extrinsic definition of the term "capitalization," that his sentence was substantively unreasonable, and that Court made insufficient findings to support the forfeiture amount it imposed. *Id.* On May 6, 2020, the Second Circuit rejected all of Muraca's arguments and affirmed his conviction. *Muraca*, 803 F. App'x at 547. Muraca, proceeding *pro se*, moved on July 2, 2021 to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. *See* Dkt. No. 129 ("Pet'r Mot.").

## LEGAL STANDARD

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner subject to home confinement or supervised release is considered "in custody" for the purposes of this statute. *Baly v. Certificate of Appeals Supreme Ct. of New York*, 2022 WL 3214920, at *3 (S.D.N.Y. Aug. 9, 2022); *see Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006).[1]

In most cases, "a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance" of counsel. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Nevertheless, "[b]ecause collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). One such rule is the mandate rule, which both bars re-litigation of issues "expressly decided" by appellate courts and issues "impliedly resolved by the appellate court's mandate." *Id.*

To establish a claim of ineffective assistance of counsel, a petitioner must show: (1) that his attorney's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *see* U.S. Const. amend. VI. When considering the first prong of the *Strickland* test, courts apply a "strong presumption" that counsel's representation fell "within the wide range of reasonable professional assistance." 466 U.S. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Even if a petitioner has shown that an attorney's performance was objectively unreasonable, he must still demonstrate that he was prejudiced by his counsel's deficient conduct. To do so, "[i]t is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). Rather, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. An ineffective assistance of counsel claim "must be rejected" if the petitioner "fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011).

**DISCUSSION**

**I.     Ineffective Assistance of Counsel Claims**

Muraca asserts that his trial counsel provided him with ineffective assistance for six reasons: (1) counsel failed to recognize and correct the definition of "capitalization" during trial, Pet'r Mot. at 2; (2) counsel failed to request a special verdict form, *id.* at 12, (3) counsel failed to elicit evidence through cross-examination that government witnesses had criminal records, *id.* at 17; (4) counsel failed to call witnesses from a forensic accounting firm to testify, *id.* at 18-19; (5) counsel insisted that Muraca not testify on his own behalf, *id.* at 21; and (6) counsel ignored Muraca's request to object to Government statements about Muraca's medical conditions, *id.* at 23-25.  The Court considers each in turn.

**A. Defining "Capitalization" During Trial**

Muraca first argues that his counsel was constitutionally ineffective for failing to elicit testimony concerning whether the term "capitalization" could include intellectual property.  *Id.* at 2.  If the jury had heard evidence that "capitalization" can include the assets of a company, Muraca contends, it would not have been "inclined to convict" him.  *Id.* at 6.  Trial counsel instead "allowed the jury to rely … on the inaccurate and incomplete testimony of a prosecution witness regarding his understanding of those terms."  *Id.* at 2.

The Court rejects this argument because Muraca fails to satisfy the *Strickland* test.  Although Muraca argues that his attorney "should have corrected" the definition of "capitalization" through cross-examination, Pet'r Mot. at 4, counsel's actions fell "within the wide range of reasonable professional assistance" as required by the Constitution.  *Strickland*, 466 U.S. at 669.  It is well established that "the conduct of examination and cross-examination is entrusted to the judgment of the lawyer" and should not be "second-guess[ed] … unless there is no strategic

5

or tactical justification for the course taken." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998). In this case, strategic justifications existed for defense counsel's decision not to challenge DiCesare's testimony. As the Government notes, for instance, "[h]ad defense counsel cross-examined DiCesare about other possible definitions of 'capitalization,' that would have invited redirect testimony emphasizing for the jury the myriad other ways in which Muraca fraudulently represented to DiCesare that others had already invested in Metabo." Dkt. No. 132 ("Resp't Br."). *See* Tr. 939-84; GX 611, 1306, 609.

Even if counsel's strategic decisions were objectively unreasonable, Muraca has not met the "heavy burden" of showing actual prejudice. *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004). A jury found Muraca guilty on both counts of the indictment after considering substantial evidence that Muraca misled investors, *see* GX 301, 302, 604, 607, 611, comingled corporate and personal funds, *see* GX 125, 1307, exaggerated his own investments, *see* GX 707, 1304, 1305, made false statements about clinical trials, *see* GX 1005, 1006, and lied to government officials, *see, e.g.*, Tr. 420-23, GX 1012. And, even if defense counsel had elicited testimony that "capitalization" includes the value of intellectual property, the Government asserts that it would have introduced additional evidence that Muraca also made false statements about the value of his companies' intellectual property. *See* Resp't Br. at 30; Presentence Report ¶¶ 18, 39 n.1. Since "[e]ven serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt," *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001), Muraca's argument fails.[2]

---

[2] The Government argues, in the alternative, that Muraca's argument is barred by the mandate rule. *See* Resp't Br. at 27-28. The Court rejects this argument because the Second Circuit's May 27, 2020 Order neither "expressly decided" nor "impliedly resolved" Muraca's instant claim. *Yick Man Mui*, 614 F.3d at 53. Although the Circuit held that this Court did not abuse its discretion when "declin[ing] to provide [the jury] an extra-record definition" of the term "capitalization," it did not consider the independent argument that trial counsel was ineffective for failing to elicit a definition during trial. *See Muraca*, 803 F. App'x at

**B. Special Verdict Form**

Second, Muraca contends that trial counsel erred by "not arguing" that the allegations regarding NMDX and Metabo "be split" through a special verdict form. Pet'r Mot. at 12-13. The fraud allegations were, he argues, improperly "merged into an amorphous general fraud count." *Id.* But "[n]o authority holds that a court is obliged to use a special verdict form," *United States v. Maldonado*, 20 F. App'x 59, 61 (2d Cir. 2001), and counsel's failure to request one was not unreasonable. Indeed, special verdicts in criminal cases are "generally disapproved" of, *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981), and several courts have rejected ineffective assistance of counsel claims under similar circumstances. *See, e.g.*, *Copeland-El v. United States*, 2008 WL 5220829, at *1 (E.D.N.Y. Dec. 12, 2008); *Alexander v. United States*, 1997 WL 405193, at *3 (N.D.N.Y. July 15, 1997). Because counsel's failure to request a special verdict form does not fall below an objective standard of reasonableness, this claim also fails.

**C. Witnesses With Criminal Records**

Third, Muraca submits that his counsel was ineffective for failing to introduce evidence that two Government witnesses had criminal records related to driving violations, specifically one witness's 2006 speeding arrest (resulting in a fine) and another witness's DUI offenses (resulting in probation). Pet'r Mot. at 17-18. Muraca maintains that he "strenuously disagreed" with his attorney's decision because these witnesses' criminal histories "showed their propensity for making false and misleading statements to the [p]olice."[3] *Id.* at 17. Not only would the Court

---

548; *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 606 (2d Cir. 2003) ("[A] mandate is controlling only as to matters within its compass[, and the mandate rule] does not apply to matters left open by the mandate."). In any event, because the Court now holds that Muraca has failed to meet his burden under *Strickland*, 466 U.S. 668, his argument must be rejected.

[3] Muraca argues that the witnesses' criminal records showed that they were "not truthful" because they had "obstructed law enforcement." Dkt. No. 133 ("Pet'r Reply Br.") at 22. In particular, Muraca asserts that one witness was "convicted [of] making false statements to police." Pet'r Mot. at 18. Although that witness

7

have precluded some such questioning as irrelevant and unduly prejudicial, but even as to the second witness's false statements to police, Muraca has not shown that counsel's strategic decision was objectively unreasonable or "affirmatively prove[d]" that he suffered prejudice as a result of any deficient performance, *Strickland*, 466 U.S. at 693. This claim must thus fail.

### D. Forensic Accounting Firm Testimony

Fourth, Muraca maintains that counsel should have asked individuals from a forensic accounting firm to testify, claiming that the firm produced a forensic analysis which, if presented, "would have been to [Muraca's] advantage with the [j]ury and an integral part of [his] defense." Pet'r Mot. at 18-19. The decision to forgo testimony from the forensic accounting firm was not constitutionally ineffective. Courts accord "substantial deference" to a "counsel's specific decision not to call a witness." *Murphy v. United States*, 2016 WL 6601554, at *4 (S.D.N.Y. Nov. 4, 2016). Such a decision—to call or bypass particular witnesses—"is peculiarly a question of trial strategy, which courts will practically never second-guess." *United States v. Cureton*, 2022 WL 17726842, at *3 (2d Cir. Dec. 16, 2022). Trial counsel had already extensively cross-examined the Government's forensic accountant, Tr. 660-97, and counsel may have opted against duplicative testimony or wanted to shield the potential defense witness from Government cross-examination. Further, as the Government argues, Muraca "does not identify a single fact to which the defense's forensic accountant could have testified that might have altered the balance of the

---

was never in fact convicted of making false statements, it is true that she was stopped by police while under the influence. She "falsely said that she was returning from a bar in the next town, when in fact she was traveling to a bar to look for her boyfriend." Resp't Br. at 41. The witness's lawyer did, however, "disclose[] this lie to a Massachusetts court at [her] request." *Id.*; *cf.* Fed. R. Evid. 609(a)(2). Thus, even if counsel had attempted to elicit this information and the Court had allowed it, it would have come out that the witness attempted to correct the misstatement on her own. There was no prejudice regardless, as the witness merely corroborated other evidence that company-expensed dinners Muraca hosted were social rather than work-related events. *See* Tr. 224-30. And the Government also introduced several social media posts by Muraca that described these dinners as "great meal[s] with great friends." *See* GX 1019-20.

evidence considered by the jury." Resp't Br. at 33.[4]  The Court will therefore not disrupt the substantial deference owed to counsel's decision not to call this witness.

### E. Muraca's Decision to Not Testify

Fifth, Muraca alleges that his counsel "would not allow" him to testify during trial. Pet'r Mot. at 21. After informing counsel that he wanted to testify, Muraca says that his counsel threatened to quit. *Id.* Muraca eventually agreed not to testify because he "was afraid" this attorney "would actually quit" which "would have been a disaster." *Id.*

Muraca's allegations, if true, certainly implicate his constitutional right to effective assistance. *See Strickland*, 466 U.S. at 686. As he rightly notes, "the decision whether to testify belongs to the defendant and may not be made for him by defense counsel." *Brown v. Artuz*, 124 F.3d 73, 78 (2d Cir. 1997); *see Bennett*, 663 F.3d at 84. As a result, "any claim by the defendant that defense counsel … [overrode] the defendant's desire to testify" must satisfy the *Strickland* test. *Brown*, 124 F.3d at 79; *see Nicholas v. Butler*, 953 F.2d 1550, 1553 (11th Cir. 1992) ("It is beyond question that an attorney cannot threaten to withdraw during trial in order to coerce the defendant to relinquish his fundamental right to testify."). In this Circuit, "[t]o warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). "[A] district court facing the question of constitutional ineffectiveness of counsel should, except in highly unusual

---

[4] Although Muraca alleges that the accounting firm worked on a forensic analysis "for many hours" and collected "data" that "if presented … would have been to [his] advantage with the [jury]," Pet'r Mot. at 19, he fails to substantiate this assertion. Muraca, for instance, claims that testimony by a forensic accountant "would have most certainly cleared many things up" by introducing new evidence that a Government witness "did have access and did perform banking with Berkshire Bank." *Id.* at 22. But that witness's relationship with Berkshire Bank was previously introduced at trial through testimony of another witness. *See* Resp't Br. at 43; Tr. 625.

circumstances, offer the assertedly ineffective attorney an opportunity to be heard and to present evidence." *Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir. 1998).

Accordingly, on November 3, 2023, the Court ordered that Muraca and his trial counsel file sworn affidavits "addressing any and all communications [counsel] and Mr. Muraca had—before, during, and after trial—about Mr. Muraca's right to testify and decision not to testify." Dkt. No. 139 at 2. In response, Muraca's trial counsel submitted a sworn affidavit, stating that he "never threatened to quit the case at any point" and that "the issue of [Muraca] testifying was never foreclosed in any way." Dkt. No. 140. Muraca, meanwhile, claimed that his trial counsel told him "you will not testify" at trial and "if you don't trust me anymore, you can find yourself a new attorney to represent you." Dkt. No. 141 ("Muraca Aff.") at 12-13. After reviewing these affidavits, the Court informed the parties that it intended to schedule an evidentiary hearing "during which it expects Mr. Muraca [and his trial counsel] to appear." Dkt. No. 142. On February 5, 2024, the Court also appointed new counsel to represent him at the evidentiary hearing. Dkt. No. 145. Muraca, however, turned down the opportunity to present evidence in front of the Court. Instead, on February 13, 2024, his newly Court-appointed counsel informed the Court that Muraca "does not wish to proceed with an evidentiary hearing." Dkt. No. 146.

Having considered the factual record, the parties' briefing, and Muraca's and his trial counsel's sworn affidavits, the Court rejects Muraca's claim. Ultimately, Muraca has failed to meet the "burden of proving his claim" that trial counsel threatened to quit, overbore his will to testify, or that his conduct was otherwise objectively unreasonable. *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001).

First, Muraca only provides bare allegations involving "a generic claim—one that can be, and is often, made in any case in which the defendant fails to testify—based solely on his own

10

highly self-serving … assertions." *Id.*  By contrast, trial counsel's "description of events was eminently credible." *Id.*  Counsel, for instance, plausibly maintains that "when the time came for a decision, it was mutually agreed upon between [Muraca and counsel that] Muraca would do himself more harm than good by taking the witness stand, where he would likely be compelled on cross-examination to confront and explain any number of acts and statements that would not have been helpful to his cause." Dkt. No. 140 at 2.  The Court, "having tried the case" and being "intimately familiar with the trial proceedings and the events and circumstances surrounding them," finds that counsel's explanation is consistent with the record. *Chang*, 250 F.3d at 86; *see Foster v. United States*, 581 F. App'x 105, 106 (2d Cir. 2014) (holding that an affidavit from the petitioner's trial counsel "credibly describing the circumstances concerning appellant's failure to testify … was sufficient to support dismissal of the petition").

Second, Muraca's affidavit does not suggest that he was "unaware that he had a right to testify." *United States v. Sprecher*, 1994 WL 115998, at *3 (S.D.N.Y. Mar. 29, 1994), *aff'd*, 50 F.3d 3 (2d Cir. 1995).  Muraca instead states that he was "preparing [to] testify" when his attorneys told him not to take the stand because he might get "too emotional [and] angry during cross examination." Muraca Aff. at 12.  This account is not entirely inconsistent with trial counsel's explanation, which avers that Muraca "was fully aware of his right to testify" but that he chose not to testify due to the strategic risk of facing cross-examination. Dkt. No. 140 at 1-2.  Courts under similar circumstances have denied ineffective assistance of counsel claims on this basis. *See, e.g.*, *Moreno-Godoy v. United States*, 2014 WL 1088300, at *8 (S.D.N.Y. Mar. 20, 2014) ("[T]he two statements can be reconciled if at some point during the trial [Defendant] wanted to testify but … by the time the decision had to he made, he changed his mind.").

11

Third, although the Court provided Muraca with an opportunity to substantiate his claims through an evidentiary hearing, he refused. Because "the most important witness for the defense in many criminal cases is the defendant himself," *Rock v. Arkansas*, 483 U.S. 44, 52 (1987), the Court determined that Muraca and his trial counsel should be given the chance to appear at an in-person hearing to supplement their written affidavits. *See Sparman*, 154 F.3d at 52. But Muraca declined to do so. Thus, given the "highly deferential" nature of *Strickland*'s performance prong—and the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"—Muraca has not met his burden. 466 U.S. at 689. Other than his own "blanket statements," Muraca has provided no proof that trial counsel prevented him from taking the stand or otherwise fell below an objective standard of reasonableness; and he now refuses to offer live testimony to support his allegations. *Chang v. United States*, 1999 WL 439097, at *2 (E.D.N.Y. May 3, 1999), *aff'd*, 250 F.3d 79 (2d Cir. 2001). This claim therefore fails.

### F.  Counsel's Performance at Sentencing

Muraca next asserts that counsel "simply ignored" his request to object to "materially false statements" made by the Government in its sentencing submission about his medical needs. Pet'r Mot. at 23-24. This argument is without merit. During sentencing, Muraca's counsel argued that his client's health conditions, among other reasons, weighed in favor of a below-Guidelines sentence. *See* Dkt. No. 80 ("Def. Sent. Memo") at 7-8, 24-25; Sent. Tr. at 44. In doing so, and contrary to Muraca's claim, defense counsel objected to the Government's sentencing submission. Def. Sent. Memo at 25 ("Because of the seriousness of Mr. Muraca's health conditions, any onerous prison sentence would put his health at risk."). The Court later adopted a Guidelines calculation of 24 to 30 months' imprisonment, Sent. Tr. at 17-18, 48, and considered Muraca's arguments concerning his health, *id.* at 50, but nonetheless sentenced Muraca to a term of 27

months' imprisonment, *id.* at 51.[5]  Because counsel's advocacy did not fall below any objective standard of reasonableness at sentencing, the Court also rejects this ineffective assistance claim.

## II.      Forfeiture Claim

Muraca finally insists the Court erred when it ordered Muraca to forfeit $1,165,280. Pet'r Mot. at 20. Muraca instead proposes that "the forfeiture amount should be reduced to reflect, at most, the funds raised in connection with Metabo" because "there is no basis to conclude that the money raised for NMDX was 'involved' in fraudulent activity." *Id.* This argument is procedurally barred for two reasons. First, on direct appeal, the Second Circuit held that "[t]he district court did not commit error, plain or otherwise, in ordering Muraca to forfeit $1,165,280." *Muraca*, 803 F. App'x at 547. The mandate rule therefore bars re-litigation of this issue. *See Yick Man Mui*, 614 F.3d at 53. Second, because "a § 2255 motion may not attack the non-custodial aspects of a sentence," *Gonzalez v. United States*, 792 F.3d 232, 237 (2d Cir. 2015), the claim must be rejected.

## CONCLUSION

For the foregoing reasons, Muraca's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 129 and close this case.

Dated:   June 18, 2024
         New York, New York

                                                 _____
                                                 Hon. Ronnie Abrams
                                                 United States District Judge

---

[5] Indeed, although the Government and probation department calculated a Guidelines range of 57 to 71 months' imprisonment, the Court adopted Muraca's Guidelines calculation of 24 to 30 months' imprisonment. *See* Dkt. No. 82 at 18; Dkt. No. 77 at 21; Sent. Tr. at 13, 17-19.